OPINION OF THE COURT
Marjorie C. Mix, J.
The case at bar raises issues of apparent first impression that require this court to interpret chapter 7 of the Laws of 1999, effective February 11, 1999, which was enacted in order to bring New York into conformity with the Federal Adoption and Safe Families Act of 1997 (Pub L 105-89, 111 US Stat 2115 [1997] [hereinafter ASFA]). Among the amendments thereby made to the Family Court Act was the addition of a new section, Family Court Act § 1039-b, which authorizes the Department of Social Services to file a motion upon notice requesting a finding that reasonable efforts to return the child to his or her home are no longer required.
A threshold issue is whether the newly enacted Family Court Act § 1039-b is applicable where, as here, the petition alleging the abuse or neglect of a child was filed prior to the effective date of New York’s ASFA legislation. Also at issue is whether a motion pursuant to Family Court Act § 1039-b to relieve the Department of Social Services of its obligation to make reasonable efforts to reunite the child and parent may be made and determined after the fact-finding adjudication of neglect or abuse, but prior to the holding of the dispositional hearing. Finally, the court must consider petitioner’s contention that should the motion pursuant to Family Court Act § 1039-b be *1015 granted, there is no further need to conduct a dispositional hearing.
For the reasons that follow, this court holds that Family Court Act § 1039-b may properly be applied to proceedings filed before the effective date of New York’s ASFA legislation. While such a motion may be made and determined prior to the Family Court Act article 10 dispositional hearing in an appropriate case, the court does not accept petitioner’s contention that the dispositional hearing is thereby rendered superfluous and may be dispensed with.
PACTS
On August 11, 1998, the child Keith was found abandoned by police officers in a bedroom of the home of respondent Tiffany M., his mother. The nine-year-old child had been bound with electrical cords, hooded with a pillowcase tied around his neck, and gagged with a sock stuffed in his mouth and secured by electrical tape wrapped around his face. The child’s arms and legs had been tied so that he was forced to remain standing in a cruciform position; he was otherwise naked, loud music was left playing in the room, and the door to the room was taped shut. When discovered, the child had been tied up since August 7, 1998; he was found to have sustained several old and healing cuts and bruises, whip marks, and numerous scars and lacerations.
The Erie County Department of Social Services (hereinafter Department) petitioned against respondents Tiffany M. and Quanaparker H. for a determination that the children Keith M. (date of birth May 8, 1989) and Mikel M. (date of birth Dec. 13, 1992) are abused children. Following a hearing, this court issued its “Determination of Fact-Finding Hearing (Child Abuse)” (hereinafter Fact-Finding Order) and accompanying Decision (Decision) on July 7, 1999. The court therein determined the facts recounted above and found that petitioner had more than met its burden of proving by a preponderance of the evidence that Keith was the victim of abuse perpetuated by respondent caretakers M. and H., as defined by Family Court Act § 1012 (e) (i) and (ii). This abuse comprised at least four occasions when the child was tied up and numerous occasions when he was whipped and beaten.
The court further concluded that petitioner also met the higher burden of proving by clear and convincing evidence that respondent M. repeatedly and severely abused Keith. Therefore, in addition to the finding of abuse as to both respondents, *1016 the court found based upon clear and convincing evidence that Keith was the victim of severe and repeated abuse inflicted by respondent M., as defined in paragraphs (a) and (b) of subdivision (8) of section 384-b of the Social Services Law. The court also found the proof of the abuse of Keith admissible and sufficient, under the circumstances at bar, to establish that his brother Mikel is a neglected child within the meaning of Family Court Act § 1012 (f) (i) (B). (Matter of Brian B., 233 AD2d 953 [4th Dept 1996].)
Following the July 7, 1999 entry of this court’s Fact-Finding Order and Decision, petitioner made application by written motion dated July 28, 1999 for an order pursuant to Family Court Act § 1039-b determining that reasonable efforts to reunite the subject children with the respondent mother shall not be required. The motion was made returnable on July 30, 1999, the date scheduled for a dispositional hearing; the court sua sponte adjourned argument on the motion in order to permit respondent’s counsel an adequate opportunity to reply.
Motion argument was heard on Friday, August 27, 1999. In support of the Department’s “no diligent efforts” motion, a “Certificate of Conviction — Imprisonment” (Certificate) as to each respondent was offered and entered as evidence. The Certificate relating to respondent M. recites that on May 27, 1999 she was convicted in the Supreme Court, Erie County, before the Honorable Mario Rossetti of two counts of assault in the first degree (Penal Law § 120.10 [1], [3]), assault in the second degree (Penal Law § 120.05 [8]), unlawful imprisonment in the first degree (Penal Law § 135.10), and endangering the welfare of a child (Penal Law § 260.10 [1]). The Certificate further evidences that Ms. M. was concurrently sentenced to, inter alia, a minimum of 121/2 and a maximum of 25 years on each of the first degree assault counts, and a minimum of 21/s and a maximum of 7 years on the second degree assault conviction.
During the August 27, 1999 appearance, respondent Quanaparker H., by his attorney, consented to the entry of an order of protection barring him from further contact with the subject children. Inasmuch as respondent H. is not a parent or biological relative of the children, there are no further dispositional issues to be decided with respect to him. Accordingly, the court turns to consideration of the motions relative to respondent M.
*1017 Motions
Respondent’s motion for the removal of the Law Guardian
At the August 27, 1999 appearance, counsel for respondent M. made oral application to have the Law Guardian removed from simultaneous representation of both children, alleging that the brothers are not similarly situated and that the Law Guardian’s representation of both presents a conflict.
That motion is denied; this court has previously determined that the establishment of the abuse by respondent of Keith constituted admissible proof of her neglect of Mikel, which proof respondent failed to meet. (See, Family Ct Act § 1046 [a] [i]; Matter of Sarah L., 207 AD2d 1016 [4th Dept 1994].) In view of this court’s adjudication after submission of the case for fact-finding that Keith and Mikel were respectively the victims of respondent’s abuse and neglect, respondent’s motion is belated, unsupported by any material factual or legal distinction between the children, and can only serve to further delay the disposition of this matter.
It may be that one of the children desires further contact with the respondent and the other child does not. However, “[a] Law Guardian’s role in a child protective proceeding not only includes serving as counsel and advocate for the child, but also encompasses aiding the court in arriving at an appropriate disposition” (Matter of Dewey S., 175 AD2d 920, 921 [2d Dept 1991]). A Law Guardian “may thus attempt to persuade the court to adopt that position which, in the Law Guardian’s judgment, would best promote the child’s interest” (supra, at 921). During oral argument, the experienced Law Guardian here evinced a thorough understanding of her role to both express her clients’ respective wishes to the court as well as to attempt to persuade the court to adopt a disposition which, in the Law Guardian’s independent judgment, may be in the children’s best interests. The court is confident that the Law Guardian will properly discharge that responsibility, and counsel for the respondent has failed to allege any material conflict or potential conflict of interest which would bar the Law Guardian from representing both children.
Petitioner’s “no diligent efforts” motion pursuant to Family
Court Act § 1039-b
Preliminarily, although not raised by counsel, the instant matter presents the threshold issue of the applicability of Family Court Act § 1039-b where the petition alleging the abuse or *1018 neglect of a child was filed prior to the effective date of New York’s ASFA legislation.
It has been observed in a recent case applying ASFA provisions retroactively in a termination of parental rights proceeding that “[s]tatutes affecting the welfare of children and furthering important public policies are generally given retroactive effect.” (Matter of Marino S., 181 Misc 2d 264, 272 [Fam Ct, NY County]), citing, inter alia, Matter of Fetherston v Fetherston, 172 AD2d 831 [2d Dept 1991]; see also, Cleary v Cleary, 171 AD2d 1076, 1077 [4th Dept 1991].) While new statutes are presumptively prospective, a statute which is remedial in nature may be applied retroactively unless such application would impair vested rights. (Matter of Marino S., supra, at 272, citing McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [c]; § 54.) This court finds the reasoning in Matter of Marino S. (supra, at 273) to be persuasive here: “The overriding mandate of Federal ASFA is to clarify that in making ‘reasonable efforts’ to reunify children with their birth families, ‘the child’s health and safety shall be the paramount concern.’ (Pub L 105-89, 111 US Stat 2115, 2116, § 101 [a], amending 42 USC § 671 [a] [15] [A].) New York has duly incorporated this language into various sections of the Family Court Act and Social Services Law, including Social Services Law § 384-b (1). According to the Assembly memorandum in support of the new Act, however, this new language is consistent with ‘the existing law in New York that the health and safety of the child were always the paramount concern in providing reasonable efforts to prevent placement and promote reunification. It does not represent a change in law, policy, or emphasis in New York.’ (Mem of Assembly in Support, 1999 McKinney’s Session Law News of NY, at A-20 [‘justification’ section].) Viewed in this light, NY-ASFA is merely an attempt to refine the law concerning permanency planning for children in foster care so that New York law more fully and expeditiously accomplishes its preexisting goals. The new statute neither creates new rights nor abrogates preexisting ones, vested or otherwise * * * Accordingly, those portions of NY-ASFA relevant to the current proceedings are remedial and retroactive.”
Further support for the application of Family Court Act § 1039-b in this case is the fact that section 1055 (c) of the Family Court Act has long provided that in addition to an order of placement, the court may direct the agency to undertake diligent efforts to encourage and strengthen the parental relationship “when it finds such efforts will not be detrimental to *1019 the best interests of the child.” Thus, since respondents in article 10 proceedings were previously subject to a court determination that diligent efforts should not be undertaken by the agency when prospectively detrimental to the child, Family Court Act § 1039-b cannot be said to impair any vested right of the respondent herein. Rather, in passing Family Court Act § 1039-b, the Legislature provided a procedure for bringing on a motion to determine whether reasonable efforts must be undertaken. It is well settled that procedural matters are determined by the law in force when they arise, and that procedural changes in the, law are generally deemed applicable to subsequent proceedings in pending cases. (McKinney’s Cons Laws of NY, Book 1, Statutes § 55.)
For the above reasons, the court holds that Family Court Act § 1039-b is remedial and procedural in nature and may properly be applied to proceedings filed before the effective date of New York’s ASFA legislation.
Turning to the issue of whether a motion pursuant to Family Court Act § 1039-b may be made and determined after neglect or abuse has been adjudicated but prior to the holding of the dispositional hearing, the court finds the provision to be clear. Family Court Act § 1039-b (a) expressly provides that the Department may file a motion upon notice requesting a finding that reasonable efforts to return the child to the home are no longer required “[i]n conjunction with, or at any time subsequent to, the filing of a petition under section [1031] of this chapter” (emphasis added). Thus, the motion may be made as early as the filing of a petition to establish that a child is abused or neglected pursuant to Family Court Act § 1031 or at any time thereafter, including prior to the dispositional hearing.
With respect to the determination of the motion, Family Court Act § 1039-b (b) provides in pertinent part that
“reasonable efforts to make it possible for the child to return safely to his or her home shall not be required where the court determines that:
“(1) the parent of such child has subjected the child to aggravated circumstances, as defined in subdivision (j) of section [1012] of this article” (emphasis added).
Family Court Act § 1012 (j), in turn, defines “aggravated circumstances” as the severe or repeated abuse of a child, as defined in subdivision (8) of Social Services Law § 384-b. By Fact-Finding Order entered July 7, 1999, this court has previ *1020 ously determined based upon clear and convincing evidence that the child Keith was the victim of severe and repeated abuse inflicted by the respondent M., as defined in paragraphs (а) and (b) of subdivision (8) of section 384-b of the Social Services Law. Given this finding, the requisites of Family Court Act § 1039-b (b) (1) have been met, and a first ground supporting a “no diligent efforts” finding is prima facie established.
Moreover, pursuant to Family Court Act § 1039-b (b) (4), reasonable efforts shall not be required of the agency where the child’s parent “has been convicted of assault in the second degree as defined in section 120.05, assault in the first degree as defined in section 120.10 * * * and the commission of one of the foregoing crimes resulted in serious physical injury to the child or another child of the parent.” The Certificate evidencing these convictions being in evidence, and the court having previously found that the assaults referenced therein resulted in serious physical injury to “the child or another child of the parent,” a second ground is established which, prima facie, militates in favor of a finding that reasonable efforts are not required to return either Keith or Mikel to the home of the respondent.*
Indeed, the statutory language mandates that where any of the above grounds are established, as here, the court must make a finding at the request of the agency that reasonable efforts shall not be required “unless the court determines that providing reasonable efforts would be in the best interests of the child, not contrary to the health and safety of the child, and would likely result in the reunification of the parent and the child in the foreseeable future.” (Family Ct Act § 1039-b [b] [б] [emphasis added].)
In the instant case, the Certificate of Conviction readily evidences that, for the foreseeable future, respondent M. will be incarcerated. The statute is clear and unambiguous: absent prospective reunification in the foreseeable future, reasonable *1021 efforts “shall not be required” and the Department’s motion must be granted.
Accordingly, in view of the court’s previous findings made on the basis of clear and convincing evidence, together with the documentary evidence tendered in support of the motion, the court concludes that there is no genuine and triable issue of material fact outstanding which would preclude determination of the motion at this time. (Compare, Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M., 83 NY2d 178 [1994]; Matter of Sarah L., 207 AD2d 1016 [4th Dept 1994], supra.) As a matter of law and upon the recommendation of the Law Guardian, the court finds that reasonable efforts to return the children to their home are not required, and the Department’s motion is granted.
It does not follow, as contended by the Department during motion argument, that upon a finding that the Department is not required to make reasonable reunification efforts, the dispositional hearing becomes superfluous and may be dispensed with. Rejecting such an argument, the Court of Appeals has observed that the Family Court Act directs that a dispositional hearing be held as a condition precedent to the entry of a dispositional order. (Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M., supra, 83 NY2d, at 183, citing Family Ct Act §§ 1045, 1047, 1052 [a]; see also, Matter of Jeffery M., 226 AD2d 1114 [4th Dept 1996].) The Family Court may not dispense with the hearing and thereby limit its ability “to make an informed judgment as to the need for alternative or additional dispositional remedies in the children’s best interests,” such as the provision to the children of rehabilitative or other therapeutic services. (Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M., supra, at 183.)
Therefore, rather than obviating the need to hold a dispositional hearing, the determination of the Department’s “no reasonable efforts” motion prior to the holding of the hearing serves the salutary purpose of narrowing the scope of the inquiry to dispositional alternatives which are prospectively applicable and genuinely at issue. Where, as in the instant case, the Department’s motion is amenable to determination as a matter of law, the preliminary finding that reunification efforts will not be required of the Department is useful for “expediting the just disposition of a legal dispute for all parties and conserving already overburdened judicial resources.” (Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M., supra, 83 NY2d, at 182.)
*1022 Because a dispositional hearing is necessary in this case, it bears repeating that the focus of such a hearing is prospective, and its purpose is to enable the court “to make an informed judgment as to the need for alternative or additional dispositional remedies in the children’s best interests” (Matter of Suffolk County Dept. of Social Servs. v James M., supra, 83 NY2d, at 183, citing Family Ct Act § 1052 [a] [i]-[v].) As summarized by the panel in Matter of H./M. Children (217 AD2d 164, 169 [1st Dept 1995]): “Family Court Act § 1052 (a) lists five dispositional alternatives in child protective proceedings: (1) suspending judgment in accordance with Family Court Act § 1053; (2) releasing the child to the custody of the parent or other person legally responsible in accord with Family Court Act § 1054; (3) placing the child, in accordance with Family Court Act § 1055, with, inter alia, a relative or other suitable person for a one-year period; (4) making an order of protection under Family Court Act § 1056; or (5) placing the respondent under supervision in accordance with Family Court Act § 1057.”
Because respondent M. will be incarcerated for the foreseeable future, the first, second, and fifth alternatives would appear to be inapplicable. At issue, however, may be placement with a relative pursuant to Family Court Act § 1055, or the entry of an order of protection pursuant to Family Court Act § 1056. In addition, pursuant to Family Court Act §§ 255 and 1015-a, the court may order the Department to provide or arrange for the provision of services or assistance to the children, including rehabilitative or therapeutic services, as may be appropriate.
Where the Department has been relieved of the obligation to make reasonable efforts, as in the instant case, fairness dictates that the dispositional hearing should also afford the respondent parent an opportunity to be heard and place on the record any unilateral plan of rehabilitation and reunification which the parent may desire to pursue through his or her own efforts. Guidance may be found in decisional authority addressing the necessary components of agency plans to promote the rehabilitation of families. Such plans have typically included counseling for the parent(s) with respect to the problems that impede the return of the child(ren), planning for the child’s future, procurement of housing and employment sufficient to adequately support the child(ren), and the scheduling of regular and meaningful visitation in order to demonstrate continued interest and to permit the child(ren) to be familiar with *1023 parent(s) to whom the child(ren) will return. (See, e.g., Matter of Sheila G., 61 NY2d 368, 384 [1984].) The respondent may, for example, wish to be heard on the issue that she be granted access to the children, and may clarify for the record what additional efforts she will undertake in light of the above-stated goals, toward family reunification and rehabilitation. The focus of the hearing must remain prospective; clearly immaterial would be any attempt to proffer excuses or enter denials regarding the adjudicated fact that respondent’s previous parenting of her children was abusive and neglectful, or to explore rationales as to why she engaged in said conduct.
Finally, in addition to a dispositional hearing, Family Court' Act § 1039-b (b) (6) requires that where the court finds that reasonable efforts are not required of the agency, a permanency hearing must be held within 30 days of such finding to consider, inter alia, the appropriateness of the agency’s permanency plan for the children. Under the circumstances of the case at bar, and given the logistics of transporting the incarcerated respondent hundreds of miles to the courthouse, the court finds no tenable reason or statutory proscription which would operate to preclude the court from sequentially holding the dispositional and permanency hearings on the same appearance date.
Wherefore, it is ordered, decreed and adjudged that respondent’s motion to remove the Law Guardian from further representation of both of the subject children is hereby denied; and it is further ordered, decreed and adjudged that petitioner’s motion for an order pursuant to Family Court Act § 1039-b determining that reasonable efforts to reunite the subject children with the respondent mother shall not be required is hereby granted.

 Parenthetically, there is no force to any argument that Mikel and Keith are differently situated with respect to the issue of whether the Department should be obligated to undertake reasonable reunification efforts. Both children were in respondent M.’s care and custody when the child Keith was victimized by the respondent; the contention that Mikel had resided for a longer period of time with the respondent than had Keith is immaterial. Mikel and Keith are identically situated with respect to the pending motion as a matter of law, insofar as Family Court Act § 1039-b (b) (4) directs the entry of a “no reasonable efforts” finding relative to a child whose parent has been convicted of a first or second degree assault which has caused serious physical injury “to the child or another child of the parent.”