Matter of Anne P.C. v Steven P. (2007 NY Slip Op 51858(U))

[*1]

Matter of Anne P.C. v Steven P.

2007 NY Slip Op 51858(U) [17 Misc 3d 1107(A)]

Decided on September 7, 2007

Family Court, Monroe County

Ruhlmann, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on September 7, 2007

Family Court, Monroe County
In the Matter of a
Proceeding Under Article 6 of the Family Court Act Anne P.C., PETITIONER,
against
Steven P., RESPONDENT.
V-10620/21-06/06A

Monroe County Conflict Defender's Office, by Rhian D. Jones, Esq., for Petitioner
Frederick L. Garwood, Esq., for Respondent
Lisa B. Morris, Esq., Law Guardian.

Dandrea L. Ruhlmann, J.

May a court order the Monroe County Department of Human Services
(Department) to file a Family Court Act (FCA) Article 10 neglect petition based upon facts
presented in a FCA Article 6 custody/visitation proceeding? By Order to Show Cause filed
August 23, 2006 Anne P.C. (Petitioner) commenced this proceeding to modify an existing
custodial order concerning the parties' two children Mikayla and Isaiah. Both the petition and the
answer of Steven P. (Respondent) allege activity that may constitute neglect under FCA Article
10. The Law Guardian filed a motion for an order directing the Department to file a FCA Article
10 neglect petition against the parties. By order from the Bench the Court denied the
motion.[FN1] This decision
supplements that oral ruling.
Statement of Facts:
Petitioner filed a FCA Article 6 petition alleging that the parties' joint custodial [*2]arrangement with primary physical residency with Respondent
should be modified. The petition was sparked by Petitioner's visit to Respondent's home where
she allegedly found Respondent intoxicated and his home in a deplorable condition. The Court
ordered a FCA § 1034 investigation. Based upon that investigation, the Department's
caseworker indicated Respondent for inadequate guardianship and parental drug and alcohol
misuse but observed that "[a]ll the children's doctor's [sic], dentist, counseling and school
concerns have been addressed in the past two weeks by [Petitioner]. [Respondent] has not drank
[sic] in the presence of the children since the last court date and has begun to clean the home.
Both parents are receptive to preventive services." The Court ordered a follow-up FCA §
1034 investigation regarding additional but similar allegations against both Respondent and
Petitioner - including an allegation that Petitioner admitted Isaiah to an in-patient psychiatry unit
despite that staff there reported Isaiah did not exhibit any behavioral difficulties. The caseworker
did not indicate that report but rather observed that "the children appear safe at this time in the
home of both their mother and their father. However, it appears as if both parents could benefit
from personal counseling, as well as involvement in the therapy of their children." After
investigation, the Department deemed it unnecessary at that time to file a FCA Article 10
petition.
The Law Guardian, troubled by the information gleaned from the FCA § 1034 reports
and from her own investigation, filed a motion for the Court to order the Department to file a
FCA Article 10 neglect petition. At the July 10, 2007 appearance, the Court inquired whether the
Law Guardian would amend her motion for a court order directing her to file a FCA Article 10
petition on the children's behalf (see Matter of Katelyn E., 241 AD2d 494 [2d Dept 1997]
[Family Court Act § 1032 (b) used to direct a Law Guardian to file a neglect petition]). The
Law Guardian declined.
At the Court's request the caseworkers who prepared the FCA § 1034 investigation
reports also appeared on July 10, 2007. Caseworker Richard Bent reported in detail that both
parties have parenting difficulties but reiterated that preventive services were available and
requested the Court to order yet another FCA § 1034 investigation to enable him to follow
up. Although the Court found that it could not direct the Department to file a FCA Article 10
petition as a matter of law, it again ordered a FCA § 1034 investigation requiring the
Department to consider the cumulative incidents to determine whether - in its discretion -
a FCA Article 10 neglect filing was necessary. As a result of such ordered investigation, the
Department initiated a FCA Article 10 petition on July 23, 2007 and the children were
temporarily removed and placed in foster care. Although resolved by the Department's filing, the
issue of whether the Court has the authority to order a FCA Article 10 filing is likely to
recur;[FN2] hence, this
decision supplementing the Court's oral determination.
Statement of Law:
There is no clear directive whether family courts have the authority to order the
Department to file a FCA Article 10 petition. FCA § 1032 states that "[t]he following may
originate a proceeding under this article: (a) a child protective agency, or (b) a person
on the court's direction" (emphasis added). The plain language of the statute using the alternative
"or" [*3]indicates that the Legislature did not intend for a child
protective agency - which has authority to file a FCA Article 10 petition under subsection (a) -
from constituting a "person" under subsection (b) (Matter of Tiffany A., 183 Misc 2d 391
[Fam Ct, Queens County 2000], affirmed 279 AD2d 522 [2d Dept 2001]). The New York
State Supreme Court, Appellate Division, Third Department has held however that under certain
limited circumstances a family court has authority to direct a child protective agency to file a
FCA Article 10 neglect petition against parties involved in a FCA Article 6 custodial dispute
(Matter of Johnson v Johnson, 279 AD2d 814 [3d Dept 2001], lv denied 96
NY2d 715 [2001]).
In the absence of Fourth Department authority on this issue the Court considers holdings
from both the Second and Third Departments (see Matter of C.S., 12 Misc 3d 302, 310 [Fam Ct, Bronx County
2006], citing People v Shakur, 215 AD2d 184 [1st Dept 1995]; Mountain View
Coach Lines, Inc. v Storms, 102 AD2d 663, 664 [2d Dept 1984] [in the absence of appellate
authority from court's own Department, the doctrine of stare decisis requires trial courts
to follow precedent of Appellate Divisions of other judicial departments]). Although the Second
Department affirmed a lengthy decision that centered on this very issue (Matter of Tiffany
A., 183 Misc 2d 391 [Fam Ct, Queens County 2000]), the appeal itself did not address same.
The Third Department's holding in Matter of Johnson v Johnson (279 AD2d 814) - thus
controlling - is limited to the "unique circumstances of [that] case" and the court therein details
that "the recommended and usual course in a custody proceeding [instead] would have been to
order an investigation pursuant to Family Court Act § 1034 (1)" (Matter of Johnson v
Johnson, 279 AD2d at 817; see also Weber v Stony Brook Hospital, 60 NY2d 208,
213 [1983] [there may be occasions when it is appropriate for the court to act without making an
independent investigation or further inquiry of the Department]).
Indeed, the power of this Court to initiate a FCA Article 10 neglect case from a FCA Article
6 custody case is limited to that prescribed in Family Court Act § 1034 (1) (b) which
permits the Court to "order the child protective service of the appropriate department of social
services or request any other appropriate child protective agency to conduct a child protective
investigation as described by the social services law and report its findings to the
court: in order to determine whether a proceeding under this article should be
initiated" (emphasis added). As the statute directs that the investigation be described by the
social services law, this places an important limit on the Court's power - although permitting the
Court to order an investigation, such investigation's form and content is determined by the social
services law (Matter of Zena O., 212 AD2d 712 [2d Dept 1995] [it was an abuse of
discretion for family court to order that the child protective agency perform validator interviews -
contrary to the child protective agency's informed opinion]). Although FCA § 1034 does not
prescribe who then determines whether a FCA Article 10 proceeding should be initiated, the
Court is without such authority in the absence of a legislative mandate. When the Legislature
deemed it necessary to grant family courts power to commence FCA Article 10 proceedings, it
has done so specifically (see Fam Ct Act § 716 [permitting the Court on its own
motion at any time during a Person In Need of Supervision proceeding to substitute a neglect
petition]). Where the Legislature has not granted courts oversight authority on a specific issue,
that authority remains with the administrative agency (see Matter of James B., 96 AD2d
730 [4th Dept 1983]; see also Matter of Hasani B., 195 AD2d 404 [1st Dept 1993];
Matter of Enrique R., 126 AD2d 169 [1st Dept [*4]1987];
Matter of D. Children, 90 AD2d 348 [4th Dept 1982], affirmed 60 NY2d 838
[1983]).
After a FCA § 1034 investigation, then, it is the Department who determines ultimately
whether there is enough evidence to constitute abuse or neglect as defined by the Family Court
Act. Mandating that the Department file a neglect petition after it has investigated and
determined that the situation does not so warrant would usurp the Department's decision-making
authority (see Matter of Tiffany A., 183 Misc 2d 391, 396, citing Matter of Hasani
B., 195 AD2d 404 [1st Dept 1993]). It may also compel the Department to commence a FCA
Article 10 proceeding when there is not enough evidence for a finding: Matter of St.
George (NYLJ, Nov. 13, 2000, at 28, col 1 [Fam Ct, Monroe County 2000]) illustrates this
as problematic. In that case heard by three different judges, the first Judge ordered the
Department to file a neglect; the second Judge dismissed the neglect but permitted the Law
Guardian to file a neglect under Family Court Act § 1032 (b); and the third Judge dismissed
the Law Guardian's neglect petition after trial. Once a neglect petition is dismissed outright the
Department may not provide preventive services to the family, possibly proving detrimental to a
family in such need. FCA § 1034 contemplates that when the Department reports indicated
findings, it will either commence a neglect/abuse proceeding or will provide preventive services
to the parties avoiding the need to file such petition. Here, unlike in Matter of Johnson v
Johnson (279 AD2d at 817), the Court ordered - not one but three - FCA § 1034
investigations. Not until after the last appearance - and the Court's order for a FCA § 1034
report encompassing all cumulative allegations and prior reports - did the Department in its
discretion choose to file a FCA Article 10 petition. Before the filing, the Department offered
preventive services but the parties did not take full advantage of such services.
Family Court Act § 255
Since no authority exists under FCA Article 10 for the Court to direct the Department to file
an abuse/neglect petition, the only other relevant statute that might arguably grant the Court such
authority is FCA § 255:It is hereby made the duty of, and the family court or a judge thereof
may order, any state, county, municipal and school district officer and employee to render such
assistance and cooperation as shall be within his legal authority, as may be required, to further
the objects of this act. . .
It is hereby made the duty of and the family court or judge thereof may order, any
agency or other institution to render such information, assistance and cooperation as shall be
within its legal authority concerning a child who is or shall be under its care, treatment,
supervision or custody as may be required to further the objects of this act. The court is
authorized to seek the cooperation of, and may use, within its authorized appropriation therefor,
the services of all societies or organizations, public or private, having for their object the
protection or aid of children or families, including family counseling services, to the end that the
court may be assisted in every reasonable way to give the children and families within its
jurisdiction such care, protection and assistance as will best enhance their welfare.

In Matter of Lorie C. (49 NY2d 161 [1980]), the New York State Court of
Appeals addressed this broad statute and determined that it does not allow a court-ordered plan
making the Probation Department responsible for planning, placement and supervision of all
children on [*5]probation without interference from the
Department of Social Services. The Court deduced that the Legislature specifically provided that
Social Services should be the Agency responsible for the placement of children (Social Services
Law § 398 [6]) and "courts do not normally have overview of the lawful acts of appointive
and elected officials involving questions of judgment, discretion, allocation of resources and
priorities" (id. at 171). Similarly here, the Legislature has specifically provided that the
Department shall bring abuse and neglect cases before the Family Court for
adjudication "when necessary" (Social Services Law § 397 [2] [b]).
As the concepts of a court "order" on the one hand and rendering "assistance and
cooperation" pursuant to FCA § 255 on the other are to some degree antithetical, the
Legislature's grant of supervisory power to the Court over an agency should be spelled out
(Matter of Lorie C., 49 NY2d 161). For example, after a New York State Appellate Court
held that it was an abuse of discretion for Family Court to direct that a child remain in the same
foster home as his sibling contrary to the opinion of the Department (Matter of James B.,
96 AD2d 730 [4th Dept 1983]), the Legislature amended the law to require the Department to
place siblings together (Family Court Act § 1027-a; see Custody & Guardianship of
Sasha R., 246 AD2d 1, 7 [1st Dept 1998]).
It is a legislative privilege to devise how the other two branches of government co-exist in
the child protective arena. This is certainly no easy task as there are fine lines between where the
Department decision-making ends and the Court's authority begins (see e.g. Moore v Melesky, 14 AD3d
757 [3d Dept 2005] [holding that the Social Services agency did not fail to comply with the
requirements of FCA Article 10 where it relied on placement of the child with father while
investigating abuse allegations raised against mother - with the judiciary thereafter becoming
involved and ordering a return of the child's physical custody to mother]). Family Court Act
§ 1034 is only one example of the overlay between FCA Articles 6 and 10 (see generally Matter of A.B. v D.W.,
16 Misc 3d 578 [Fam Ct, Monroe County 2007]). The Legislature places the burden of
commencing a FCA Article 10 proceeding on the Department - that administrative body must
then regulate when it is "necessary" to do so (Social Services Law § 397 [2] [b]; see
18 NYCRR 432.2 [Child Protective Services: responsibilities and organization]).
Now, therefore, it is hereby
ORDERED that the motion for an order directing the Department to file a FCA Article 10
neglect petition is denied.
Dated this 7th day of September, 2007, at Rochester, New York.
___________________________
HON. Dandrea L. Ruhlmann
FAMILY COURT JUDGE
Pursuant to §1113 of the Family Court Act, an appeal must be taken within
thirty days of receipt of the order by appellant in Court, thirty-five days from the mailing of the
order to the appellant by the Clerk of the Court, or thirty days after service by a party or law
guardian upon the appellant, whichever is earliest.
Footnotes

Footnote 1: Since the last Court appearance,
the Department initiated a FCA Article 10 proceeding. The Department temporarily removed the
children from their home on July 23, 2007. 

Footnote 2: In fact, this very issue has been
raised before this Court in other proceedings; in all such proceedings the Court was able to
dispose of the issue short of ordering a filing.